IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STERLING MEDICAL SUPPLIES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 0066 |
| | ) | Paul E. Plunkett, Senior Judge |
| v. | ) | |
| | ) | |
| BELIMED, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Sterling Medical Supplies, Inc. ("Sterling") or ("Plaintiff") has sued Belimed, Inc. ("Defendant") for its alleged breach of the parties' Sales Representation Agreement ("Agreement"). In its answer to Sterling's amended complaint ("complaint"), Belimed initiated an amended counterclaim ("counterclaim") against Plaintiff also asserting a claim for breach of the Agreement. Defendant states that Plaintiff's failure to use its best efforts to market, sell, and manage Belimed's operation has led to Sterling's breach. Plaintiffs have filed a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss the counterclaim for failure to state a claim, contending that Defendant has not sufficiently alleged Plaintiff's breach. For the reasons set forth below, the Rule 12(b)(6) motion to dismiss is denied.

## Facts

The facts are, for the most part, undisputed. Plaintiff is in the business of marketing and selling medical supplies. Defendant is a distributor of medical supplies. On March 1, 1993, the parties entered into an Agreement. In their Agreement, Defendant was to provide Plaintiff with brochures and supplies in order to sell, market and manage Defendant's product in an exclusive territory comprised of five Midwestern states. (Pl.'s Am. Compl., Ex. A.) Plaintiff contends that it entered into independent contracts with other sales representatives to assist in furthering the purpose of the Agreement. (*Id.* at ¶9 and Ex. A.) Sterling further states that Defendant was aware of these independent contracts that Plaintiff had formed. (*Id.* at ¶11.) Plaintiff brought forth a three-count complaint alleging Defendant breached its portion of the Agreement because Defendant: (1) did not properly pay commissions that were owed; (2) intentionally interfered with its business relations; and (3) was in violation of the Illinois Sales Representatives Act, 820 ILCS 120.

Defendant then initiated a counterclaim stating Plaintiff breached for failure to perform its contractual obligations of marketing, managing and selling Defendant's products. (Def. Ans. and Counterclaim at 6.) Plaintiff has moved for this Rule 12(b)(6) motion to dismiss for failure to sufficiently establish that Plaintiff breached its duties.

## Legal Standard

On a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in movant's favor. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no

relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## Discussion

In its counterclaim, Defendant alleges that Plaintiff breached its duties under the contract. Defendant states that because Sterling neglected its obligations to represent and sell Belimed products, it has breached the contract and consequently caused Defendant substantial damages. (Am. Countercl. ¶ 6-7.) Defendant claims that this breach is further illustrated through Plaintiff's failure to exercise its best efforts to sell Defendant's products and that because Sterling's president/owner virtually gave up his role, sales were not made and marketing was not complete. (Am. Countercl. ¶¶ 6-9.) Plaintiff argues that the claim should be dismissed because: (1) the contract does not expressly state that the parties must use their best efforts; (2) failure to use good faith best efforts, alone, does not constitute a breach of contract; and (3) Defendant has not sufficiently established that Sterling breached any other duty to Belimed. (Pl.'s Answer at 1-2.)

This Court has diversity jurisdiction under 28 U.S.C. §1332(a)(1). Federal district courts, sitting in diversity, apply the substantive law of the forum state, which compels us to apply Illinois law. *ITQ Lata, LLC v. MB Fin. Bank, N.A.*, 317 F. Supp. 2d 844, 851 (citing *Alper v. Altheimer & Gray*, 257 F.3d 680, 687 (7th Cir. 2000)). Section 1-203 of the UCC provides that "every contract or duty within this Act imposes an obligation of good faith in its performance or enforcement." 810 ILCS 5 1-203. "Good faith" is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." 810 ILCS 5/2-103(b). Furthermore, if a contract can be read in more than one way, the implied duty of good faith and fair dealing is used as an aid

to determine the intent of the parties, unless that duty is expressly disavowed. *Id.* (citing *Citicorp Savings of Ill. v. Rucker,* 295 Ill. App. 3d 801, 808 (Ill. App. Ct. 1998)). This implied duty expects that the parties fulfill their obligations to the contract "with proper motive" and in good faith. *Citicorp,* 295 Ill. App. 3d at 808.

Plaintiff argues that under Illinois law, the covenant of good faith and fair dealing does not, itself, impose separate duties upon the parties to a contract. *Beraha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1443 (7th Cir. 1992). Instead, the covenant merely "guides the construction of the explicit terms in the agreement." *Id.* Defendant does not dispute this conclusion and emphasizes that this is not a basis for its proclaimed cause of action.

However, while good faith does not by itself create a cause of action, failure to exert best efforts would. *Beraha* at 1443. In Illinois the implied duty of best efforts is also read into every contract. Specifically, in an exclusive contract setting, "the law reads into it an obligation that the firm use its best efforts to promote the contract's objectives." *United Cancer Council, Inc. v. Comm'r of Internal Revenue,* 165 F.3d 1173, 1177 (7th Circ. 1999). The court there noted that when a firm is granted an exclusive contract, the law requires it to imply a best effort clause, and in such a case, if one party walked away from the contract without exerting best efforts, a breach would result. *Id.* Illinois courts have determined that in these exclusive sales representative agreements, parties will also be expected to use their best efforts "to effectuate the intent of the parties." *Lapinski v. Laboratory Tech., Inc.,* no. 89C7813 1992 WL 253057, *10 (Sept. 24, 1992).

Plaintiff argues that these cases are not applicable because they all root back to *Wood v. Lucy, Lady Duff-Gordon,* which discussed the validity of a contract, and the existence of a valid contract is not in question here. We disagree. Although in *Wood* the parties did dispute the existence of a

4

contract, the discussion regarding the implied best efforts clause is useful to this situation. Regardless of the court's decision of the existence of a contract there, the court determined that in the presence of a valid contract, the plaintiff was under an implied obligation to use efforts to market the defendant's designs. *Wood v. Lucy, Lady Duff-Gordon,* 118 N.E. 214, 214 (1917). Here, an implied obligation of best efforts also exists and the parties to this exclusive sales agreement were required to exert best efforts.

As to the breach of contract, Plaintiff first argues that because the contract was with Sterling Inc., not the owner as an individual, that the owner's conduct is no way related to the liability of the company. Plaintiff is mistaken. "Unquestionably, the president or chief executive officer of a corporation has very broad powers to bind the corporation by virtue of the office he holds." *Evanston Bank v. ContiCommodity Servs., Inc.,* 623 F. Supp. 1014, 1031 (N.D. Ill., 1985). Those powers are limited to transactions that are made within the "usual and ordinary business." *Id.* at 1031-32.

Here, Plaintiff alleges that Houston, the owner and president of Sterling, cannot bind Sterling through his actions. Defendant responds that Houston is the sole president and owner and is responsible for managing, marketing and driving the sales force of Sterling and, as such, his actions in his role as president owner will bind Sterling. The question of what is usual course of business is a factual one, but at this juncture it can be inferred that the act in question, selling, marketing, and managing were all part of Houston's normal duties and Sterling is a proper party. Furthermore, in the counterclaim, Defendant is not attempting to impute personal liability to Houston, it merely states that because of his actions as owner, operator, and director, his company breached a contractual obligation. Therefore, the counterclaim will not be dismissed on this basis. Second, Plaintiff argues

that Defendant has not set forth the requisite elements that comprise a breach of contract. To state a breach of contract claim under Illinois law, a movant must establish: (1) the existence of a valid and enforceable contract; (2) that he has satisfied all of his contractual obligations; (3) the non-movant has breached the contract; and (4) there are resulting damages to the movant. *Id.* (citing *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001)). The intent of the parties is integral in determining the effect and the obligations under the contract. *Id.*

There is no dispute that a valid and enforceable contract exists between the parties and Defendant contends all of its obligations have been satisfied. (Def.'s Am. Countercl. ¶3-4.) By the terms of the Agreement, Defendant states that Plaintiff owed him a duty to sell, market, and manage sales for Defendant's medical products and that Plaintiff failed to perform. (*Id.* ¶5-7.) Defendant has presented facts to establish each of these breach elements; the only prong that is disputed is whether Defendant met the threshold to establish a genuine breach.

Here, Defendant supports his claim for breach of contract by stating that Plaintiff neglected its duties by failing to use its best efforts to market, manage, sell, and represent Defendant's products. (*Id.* at ¶7-9) Defendant points to specific conduct by Sterling's president /owner, such as giving up his role of managing and directing, making himself unavailable to his employees, and accepting other employment. Defendant avers that because of this conduct, sales were hindered, marketing was left undone, and as a whole Plaintiff did not use its best efforts to fulfill his obligations, which resulted in substantial damages from the lost sales and marketing opportunities.

Under the liberal notice pleading standards of the Federal Rules of Civil Procedure, we must infer that Defendant will be able to present evidence to support the satisfactorily pleaded allegations. We accept as true all well-pleaded factual allegations of the complaint and must draw all reasonable

inferences in movant's favor. Defendant has set forth allegations of tangible conduct of failure to exercise best efforts and neglecting management and sales responsibilities that were contemplated in their valid contract. Applying this standard, if Defendant is, in fact, able to substantiate its allegations that Plaintiff failed to effectively promote its product, then Defendant's claim is viable.

## Conclusion

For the reasons set forth above, Plaintiff's motion to dismiss amended counterclaim is denied.

ENTER:

UNITED STATES DISTRICT JUDGE
PAUL E. PLUNKETT

DATED: JAN 2 0 2005